# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:17 CR 49

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| Vs. | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| TIMOTHY LANE PLEMMONS, | ) | |
| | ) | |
| Defendant | ) | |

_____

**THIS MATTER** is before the Court on Defendant's Motion to Suppress and Request for Evidentiary Hearing (# 10). The Government filed a Response (# 11). On September 19, 2017, the undersigned conducted an evidentiary hearing and heard evidence from the Government. Thereafter, Defendant filed a Brief in Support of his Motion to Suppress (# 18), and the Government filed a Response to Motion to Suppress (# 19).

Having carefully considered the evidence and briefs the Court enters the following Findings, Conclusions and Recommendation.

**FINDINGS AND CONCLUSIONS**

## I.      Procedural Background

Defendant is charged in a single-count bill of indictment (# 1), which alleges that on or about October 26, 2016, Defendant did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).  It was alleged that the offense involved in excess of 50 grams of actual methamphetamine.

On May 24, 2017, Defendant filed the instant Motion to Suppress (#10), in which he objects to the results of a search made of his home being introduced into evidence.  On May 31, 2017, the Government filed its Response (# 11) to the motion. The Court held an evidentiary hearing on September 19, 2017.  On October 4, 2017, Defendant filed his Brief in Support of his Motion to Suppress (# 18), and on October 11, 2017, the Government filed its Response (# 19).

## II.     Factual Background

### A.     Government's Evidence

#### 1.      Jordan Fields

Jordan Fields ("Officer Fields") was called as a witness for the Government. (Hr'g Tr. 1-71, Sept. 19, 2017.)  Officer Fields has been employed for four years as a supervisory probation officer for the North Carolina Department of Public Safety,

Probation and Parole. (T. p. 4) Fields' duties include supervising offenders who are on probation or parole. (T. p. 4)

There are conditions placed upon offenders who are on probation or parole, which are established by a Judgment entered by a judge. (Hr'g Tr. 5, Sept. 19, 2017.) Officer Fields was supervising Defendant pursuant to two convictions and judgments that had been entered against him. (Hr'g Tr. 6-13, Sept. 19, 2017; Gov.'s Exs. 1, 2 and 3.) In one Judgment Defendant had been placed on terms and conditions of probation as a result of his conviction of the crime of driving while impaired. (Hr'g Tr. 4-6, Sept. 19, 2017; Gov.'s Ex. 1.) In the second Judgment, Defendant was placed on probation for a felony conviction for habitual misdemeanor assault. (Hr'g Tr. 8-26, Sept. 19, 2017; Gov.'s Exs. 2, 3, 5, 6.)

In each judgment, there are identical conditions of probation set forth as conditions nine and eleven, which read as follows:

> (9) Submit at reasonable times to warrantless searches by a probation officer of the defendant's person and of the defendant's vehicle and premises while the defendant is present, for the purposes directly related to the probation supervision, but the defendant may not be required to submit to any other search that would otherwise be unlawful.

> (11) Not use, possess, or control any illegal drug or controlled substance unless it has been prescribed for the defendant by a licensed physician and is in the original container with the prescription number affixed on it, not knowingly associate with any known or previously convicted users, possessors, or sellers of any illegal drug

or controlled substance; and not knowingly be present at or frequent any place where such illegal drugs or controlled substances are sold, kept or used.

(Gov.'s Exs. 1, 2.)

The judgment entered for the conviction of driving while impaired was entered on February 22, 2016, by Buncombe County District Judge Edwin Dwayne Clontz, in file number 14CR4717. (Hr'g Tr. 5-7, Sept. 19, 2017; Gov.'s Ex. 1.) Defendant was placed on supervised probation for 12 months. (Gov.'s Ex. 1.) The judgment entered for the conviction of habitual misdemeanor assault was entered on February 19, 2016, by Superior Court Judge Jeffrey P. Hunt, in file number 15CRS620. (Hr'g Tr. 7-10, Sept. 19, 2017; Gov.'s Ex. 2.) The judgment placed Defendant on supervised probation for 36 months and ordered him to pay costs and attorney fees totaling $7,703.00. (Hr'g Tr. 8-9, Sept. 19, 2017; Gov.'s Ex. 2.)

On October 6, 2016, the terms and conditions in the judgment for file number 15CRS620 were modified by Superior Court Judge Alan Thornburg. (Hr'g Tr. 10-14, Sept. 19, 2017; Gov.'s Ex. 3.) The Order modifying the terms of probation was based upon the commission of violations of the terms and conditions of probation by Defendant. (Hr'g Tr. 12-13, Sept. 19, 2017; Gov.'s Ex. 3.) In the Order, Judge Thornburg found Defendant had violated the terms and conditions of probation, but continued Defendant on supervised probation. (Hr'g Tr. 13-14, Sept. 19, 2017.) Judge Thornburg included a special condition of supervised probation which stated:

> The defendant's probation was continued; defendant was ordered to complete ninety days of electronic monitoring and to have a curfew of no later than 9:00 o'clock p.m. Once monies in full compliance defendant to be terminated successfully.

(Hr'g Tr. 13-14, Sept. 19, 2017; Gov.'s Ex. 3.)

It was the understanding of Officer Fields that if Defendant completed his ninety-day period of electronic monitoring and curfew and paid his costs and attorney fees, Defendant's supervised probation was to be successfully terminated. (Hr'g Tr. 13-14, 47-53, Sept. 19, 2017.) Upon completion of the terms of probation by Defendant, Officer Fields would need to complete a modification form and then obtain the signature of a judge on that document. (Hr'g Tr. 16, 49-53, Sept. 19, 2017.)

Officer Fields testified that on September 9, 2016, he had a conversation with Buncombe County Sheriff Deputy Sgt. Tray McDonald concerning Defendant. (Hr'g Tr. 26-27, 53-54, Sept. 19, 2017.) Deputy McDonald told Officer Fields that a person who had been arrested by the Sheriff's Department had been interviewed at the Buncombe County Jail stated that he was selling methamphetamine for Defendant. (Hr'g Tr. 26-27, Sept. 19, 2017.)

Officer Fields does not know the identity of the person who was arrested and who subsequently provided the information concerning Defendant to Sgt. McDonald. (Hr'g Tr. 54-55, Sept. 19, 2017.) Fields never talked to the person about

this information. (Hr'g Tr. 55, Sept. 19, 2017.)  Officer Fields obtained no other information about Defendant from any other person. (Hr'g Tr. 56, Sept. 19, 2017.)

After receiving the information from Sgt. McDonald, Officer Fields reported the information to Chief Probation Officer Joey King. (Hr'g Tr. 67, 70-71, Sept. 19, 2017.)  Chief Probation Officer King urged Officer Fields to perform a search and reported the information to District Supervising Probation Officer Lori Anderson, who approved a search of Defendant's residence. (Hr'g Tr. 67-69, 71, Sept. 19, 2017.)  Officer Field's request for permission to search from his supervisors is in accordance with the rules, guidelines, and policies for North Carolina probation officers. (Hr'g Tr. 29-31, Sept. 19, 2017; Gov.'s Ex. 7.)  Officer Fields testified that the reason for the delay from September 9, 2016, the date the information was received, to October 26, 2016, the date of the search, was to seek approval from Officer Fields' supervisors. (Hr'g Tr. 70-71, Sept. 19, 2017.)

On October 26, 2016, Defendant's girlfriend, Monica Buckner, called Officer Fields and told him that she was going to pay the costs and attorney fees on that day. (Hr'g Tr. 48, Sept. 19, 2017.)  Later that same day at 3:51 p.m., the costs and attorney fees were paid in full in the amount of $7,763.00.  (Hr'g Tr. 15-16, Sept. 19, 2017; Gov.'s Ex. 4.)  Officer Fields testified that the payment of the costs and attorney fees had nothing to do with the decision to perform a search of Defendant's residence. (Hr'g Tr. 28, Sept. 19, 2017.)

After receiving directions from his superiors to conduct a search of Defendant's home, Officer Fields held a briefing on October 25, 2016, concerning the proposed search with other probation officers who were assigned to assist in the search. (Hr'g Tr. 28, 57, Sept. 19, 2017.) Included in the meeting were probation officers Michael Brittain, Charity Anderson, Jenny Hostell, Jared Sutton, Jacob Stamey, and Chief Probation Officer Joey King. (Hr'g Tr. 29, 56, Sept. 19, 2017.) The guidelines require that four probation officers be present for a search, but Officer Fields requested two additional officers because of Defendant's history. (Hr'g Tr. 56, Sept. 19, 2017; Gov.'s Ex. 7.) During the meeting, there was a discussion of Defendant's residence, the role of each officer involved, and safety concerns. (Hr'g Tr. 29, Sept. 19, 2017.) The search was to be for drugs and weapons. (Hr'g Tr. 29, Sept. 19, 2017.) Officer Fields was to be the lead probation officer. (Hr'g Tr. 31, Sept. 19, 2017.) The search of Defendant's residence was to take place at 9:00 p.m. on October 26, 2016, at a time when Defendant was to be in his residence in order to comply with his curfew conditions. (Hr'g Tr. 58, Sept. 19, 2017.) Officer Fields testified it is usual to conduct a search shortly after a curfew time limit arrives because a defendant is at that time required to be present in his home. (Hr'g Tr. 64-68, Sept. 19, 2017.)

Officer Fields also communicated the plan for the search of Defendant's residence to the Buncombe County Sheriff's Department and asked for their

assistance in performing the search. (Hr'g Tr. 60-61, 64-66, Sept. 19, 2017.) This request was based upon Defendant's past history of assault. (Hr'g Tr. 66, Sept. 19, 2017.) A team of deputy sheriffs was provided from the Sheriff's Community Enforcement Team, or "SCET," to assist. (Hr'g Tr. 63-64, Sept. 19, 2017.) The SCET team is a drug enforcement team. (Hr'g Tr. 64, Sept. 19, 2017.) Officer Fields did not request any particular SCET team. (Hr'g Tr. 64, Sept. 19, 2017.) Due to the fact that Officer Fields was the lead supervising probation officer, the SCET team was to take orders from Officer Fields. (Hr'g Tr. 59-60, Sept. 19, 2017.)

Officer Fields met with the SCET deputies at the Fairview Fire Department approximately ten minutes before the search was to begin at 9:00 p.m. (Hr'g Tr. 58-59, Sept. 19, 2017.) The fire department is located approximately ten minutes from Defendant's home. (Hr'g Tr. 58-59, Sept. 19, 2017.) Deputies Nathan Ball, Jake Lambert, Katie Lewis, Darrell Saucee, and Sgt. Tray McDonald were the deputies assigned to assist. (Hr'g Tr. 32-33, Sept. 19, 2017.) Officer Fields went over the plan for the search with the deputies. (Hr'g Tr. 33, Sept. 19, 2017.)

Officer Fields had an electronic system in place whereby he could determine where Defendant was located and use it to "ping" Defendant's cell phone. (Hr'g Tr. 33, 68, Sept. 19, 2017.) Officer Fields found that Defendant was located at Lowe's, a retail store, returning a refrigerator. Officer Fields called Defendant and told Defendant he was going to be late for curfew and needed to return home

immediately. (Hr'g Tr. 33-34, Sept. 19, 2017.)  Defendant returned to his home operating a motorcycle, and his girlfriend arrived at the home thereafter in a truck. (Hr'g Tr. 34, Sept. 19, 2017.)

Officer Fields talked to Defendant and told him the officers were there to conduct a warrantless search of Defendant's residence. (Hr'g Tr. 35, Sept. 19, 2017.) Defendant responded, "That would be fine." (Hr'g Tr. 35, Sept. 19, 2017.)  Officer Fields told Defendant the officers were there to perform a search rather than asking Defendant for permission to search. (Hr'g Tr. 65-66, Sept. 19, 2017.) This was a "technique" Officer Fields learned in training. (Hr'g Tr. 66, Sept. 19, 2017.)  Officer Fields testified that he believed he had received consent from Defendant to conduct the search. (Hr'g Tr. 61-62, 66, Sept. 19, 2017.)  Officer Fields did not tell Defendant he had a right to decline permission for the search, and if Defendant had declined, the officers would not perform the search. (Hr'g Tr. 35-36, 62, Sept. 19, 2017.)  If Defendant had not given permission for the search, Officer Fields would have filed a violation report alleging Defendant had violated the terms and conditions of the probationary judgments. (Hr'g Tr. 36, 62, Sept. 19, 2017.)

After Defendant stated it would be fine for the officers to conduct a search, Defendant followed the officers on his motorcycle to his home. (Hr'g Tr. 36, Sept. 19, 2017.)  Inside the house was Defendant, his girlfriend, a babysitter, and the girlfriend's son. (Hr'g Tr. 37, Sept. 19, 2017.)  Those persons were placed in a room

where they watched television while the house was being searched by officers. (Hr'g Tr. 37, Sept. 19, 2017.) During the search, marijuana was found in Defendant's bedroom. (Hr'g Tr. 38, Sept. 19, 2017.) A safe was found in the bedroom, and the officers asked Defendant for permission to open the safe. (Hr'g Tr. 38, Sept. 19, 2017.) The Defendant consented and gave a passcode or key to open the safe. Money, which was found wrapped tightly in rubber bands, was located inside the safe. (Hr'g Tr. 38-39, Sept. 19, 2017.) A quantity of methamphetamine was found in Defendant's bathroom in a floor vent by Probation Officer Brittain. (Hr'g Tr. 40, Sept. 19, 2017.) Defendant stated there had been drug dealers living in the home before him, and he had no idea that the methamphetamine was located there. (Hr'g Tr. 40-41, Sept. 19, 2017.)

## 2. Michael Joseph Brittain.

North Carolina Probation Officer Michael Joseph Brittain ("Officer Brittain") was called as a witness for the Government. (Hr'g Tr. 72-84, Sept. 19, 2017.) Officer Brittain testified he was requested by Officer Fields to assist in a search. (Hr'g Tr. 73-74, Sept. 19, 2017.) Officer Brittain was part of a group of officers sent to search Defendant's residence. (Hr'g Tr. 74, Sept. 19, 2017.) Officer Brittain actively searched Defendant's residence looking for guns, drugs, or anything illegal. (Hr'g Tr. 75, Sept. 19, 2017.) The residence was a double-wide mobile home with an added-on entrance and living room. (Hr'g Tr. 75, Sept. 19, 2017.)

Officer Brittain began searching the bathroom of the home, and as he was leaving the bathroom, he stepped on a floor vent that felt loose. (Hr'g Tr. 76, Sept. 19, 2017.) Officer Brittain actually felt the vent move when he touched it with his foot. (Hr'g Tr. 76-77, 83, Sept. 19, 2017.) Officer Brittain pulled the vent off and reached down and found a bag containing 287.4 grams of methamphetamine. (Hr'g Tr. 76, Sept. 19, 2017.) Officer Brittain also found a small black box, some scales and some baggies along with the bag of methamphetamine. (Hr'g Tr. 78-79, Sept. 19, 2017.) Officer Brittain placed the items he found on Defendant's bed and told Officer Fields about his discovery. (Hr'g Tr. 79-80, Sept. 19, 2017.) Officer Fields made a record of what was found. (Hr'g Tr. 79-80, Sept. 19, 2017.) Photographs were taken of the vent and the bag containing the methamphetamine. (Hr'g Tr. 80-82, Sept. 19, 2017; Gov.'s Exs. 8, 9.)

## III.  Discussion

### A.    Legal Standards

In <u>Sampson v. California</u>, 547 U.S. 843 (2006), the Supreme Court stated:

> The Fourth Amendment provides in relevant part that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. "The Fourth Amendment generally requires the police to obtain a warrant before conducting a search." <u>United States v. Kelly</u>, 592 F.3d 586, 589 (4th Cir. 2010). Warrantless searches and seizures are per se unreasonable, subject to a few well-established exceptions. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>Kentucky v. King</u>, 563 U.S. 452, 459-60 (2011). Individuals on probation or parole, "despite a reduced expectation of privacy," still come "within the ambit of the

fourth amendment's protection against unreasonable searches and seizures." United States v. Bradley, 571 F.2d 787, 789 n.2 (4th Cir. 1978). However, "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment."

Samson, 547 U.S. at 847.

The Fourth Amendment ultimately tests the reasonableness of a search, including some individualized suspicion, but "imposes no irreducible requirement of such suspicion." Maryland v. King, 133 S. Ct. 1958, 1969 (2013) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976)). Warrantless searches may be reasonable under certain circumstances of public interest or "because an individual is already on notice…because of…the conditions of his release from government custody." Id. Ultimately, the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion."

Samson, 547 U.S. at 855 n.4.

In North Carolina, there are three statutorily-imposed restrictions on warrantless searches of individuals on supervised probation: (1) the search must be conducted at a "reasonable time;" (2) the search must be performed by a "probation officer;" and (3) the search must be conducted for purposes "directly related to the probation supervision." N.C. Gen. Stat. § 15A-1343 (13). Probationers are not required to submit to any other search that would otherwise be unlawful. Id.; United States v. Lynch, No. 5:17-CR-12-BO, 2017 WL 1319786, at * 2 (E.D.N.C. Apr. 7, 2017).

**B.    The search of Defendant's residence did not violate the Fourth Amendment.**

Defendant initially argues that the search of his residence did not comply with his conditions of probation, which allow a warrantless search as provided by N.C.G.S. § 15A-1343(b)(13). Section 15A-1343(b)(13) provides that a probationer must:

> Submit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present, for purposes directly related to the probation supervision, but the probationer may not be required to submit to any other search that would otherwise be unlawful.

North Carolina law allows for warrantless searches of a probationer's premises subject to a specified criteria of reasonableness that requires: (1) the search be conducted at a reasonable time; (2) the probationer be present during the search; (3) the search be conducted for purposes specified by the court in imposing probation; and (4) the search be "directly related" to the probation supervision. United States v. Midgette, 478 F.3d 616 (4th Cir. 2007). The undersigned will address each of those criteria in turn.

First, Defendant contends the search was not conducted at a reasonable time, that being 9:00 p.m. Officer Fields testified that Defendant's curfew required him to be at home at 9:00 p.m. (Hr'g Tr. 64, Sept. 19, 2017; Gov. Ex. 3.) Officer Fields also testified it was a usual occurrence for searches of a probationer's home to be conducted after a curfew because a probationer is required to be at his home at that

time. (Hr'g Tr. 64-65, Sept. 19, 2017.)  Fields stated a search at 9:00 o'clock p.m. is

a normal procedure. (Hr'g Tr. 65, Sept. 19, 2017.)

The Federal Rules of Criminal Procedure define "day time" for purposes of

search warrant execution as falling between "6:00 o'clock a.m. and 10:00 o'clock

p.m." Fed. R. Crim. P. 41(a)(2)(B)  In United States v. Rizzi, 434 F.3d 669, 675 (4th

Cir. 2006) the Fourth Circuit Court of Appeals stated, "the appropriate time for a

search of a home is not amenable to a universal rule.  The same privacy interests

exist day and night, every day and the Fourth Amendment knows no holidays.  What

differs is how individuals experience intrusion on that privacy."  Id. at 675.

In this case, Defendant was conducting business shortly before the search, that

is, returning a refrigerator to a commercial store.  (Hr'g Tr. 33-34, Sept. 19, 2017.)

Defendant was required to be at home by 9:00 p.m. (Hr'g Tr. 33-34, Sept. 19, 2017.)

Defendant was not asleep, and it was in the early evening.  The search was not

conducted early in the morning at 6:15 a.m. as was disapproved in United States v.

Irons, 226 F. Supp. 3d 513 (E.D.N.C. 2016). The undersigned finds that the time of

the search was usual for the probation officers, at a time shortly after Defendant was

conducting business, and at the same time Defendant was to be home pursuant to his

probationary conditions.  As a result, the search time of 9:00 p.m. was a "reasonable

time" for the search to be conducted as set forth in § 15A-1343(b)(13).

Second, Defendant was present for the search. (Hr'g Tr. 34-35, Sept. 19, 2017.)

Third, the search was conducted for the purposes specified by the courts in imposing probation. By the terms of the judgments, Defendant was directed not to possess any illegal drug. (Gov.'s Exs. 1, 2) The search was for the purpose of searching for "drugs and weapons," which would include "illegal drugs." (Hr'g Tr. 29, Sept. 19, 2017.) The undersigned finds that the purpose of the search was for purposes specified by the Courts in the two probationary judgments.

Finally, the Court finds that the purpose of the search was directly related to Defendant's probation supervision. The word "directly" has been defined by North Carolina Courts as "in unmistakable terms." State v. Powell, 800 S.E.2d 745 (2017). As noted above, Defendant was ordered by the two judgments not to possess any illegal drug. (Gov.'s Exs. 1, 2) Officer Fields had been given information by Sgt. McDonald of the Buncombe County Sheriff's Office that a person who had been arrested by the Sheriff's Office and had been interviewed at the Buncombe County Jail stated he was selling methamphetamine for Defendant. (Hr'g Tr. 26-27, Sept. 19, 2017.) Officer Fields reported Sgt. McDonald's information to his superiors who then authorized the search. (Hr'g Tr. 67-71, Sept. 19, 2017.) Officer Fields stated that the purpose of the authorized search was to determine if Defendant was possessing controlled substances or weapons. (Hr'g Tr. 29, Sept. 19, 2017.) There

was no other purpose for the search.  As a result, "in unmistakable terms," the purpose of the search was directly related to Defendant's supervision as directed by the conditions in the two judgments. (Gov.'s Exs. 1, 2)

Based on the foregoing the undersigned finds that the search of Defendant's residence complied in all respects with the provisions of the judgments, (Gov.'s Exs. 1, 2), with North Carolina General Statute § 15A-1343(b)(13), and with Fourth Circuit precedent.  Midgette, 478 F.3d at 616

Defendant next argues that the search of his residence violated his "reasonable expectation of privacy." (# 18 at 7.)  Defendant does not define what he means by the phrase "reasonable expectation of privacy."  In any event, there are three cases that discuss and address the issue of whether or not a warrantless search pursuant to a probationary judgment which places upon a defendant a condition that his residence may be subject to a warrantless search is permitted by the Fourth Amendment.

First, in Griffin v. Wisconsin, 483 U.S. 866 (1987), a defendant was placed on probation, and one of the conditions of his probation permitted a search of the defendant's home without a warrant as long as the probation officer's supervisor approved and there was reasonable grounds to believe contraband was present.  The defendant's probation officer received information from a detective that there were, or might be, firearms in the defendant's apartment.  A warrantless search was made

and a handgun was found.  The Defendant moved to suppress the introduction of the firearm into evidence.  The Supreme Court found the warrantless search pursuant to the conditions of probation did not violate the Fourth Amendment and stated:

> A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be "reasonable".  Although we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), see, e.g., Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), we have permitted exceptions when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." New Jersey v.T.L.O., 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985) (BLACKMUN, J., concurring in judgment).  Thus, we have held that government employers and supervisors may conduct warrantless, work-related searches of employees' desks and offices without probable cause, O'Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), and that school officials may conduct warrantless searches of some student property, also without probable cause, New Jersey v. T. L. O., supra. We have also held, for similar reasons, that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet "reasonable legislative or administrative standards." Camara v. Municipal Court, 387 U.S. 523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967).  See New York v. Burger, 482 U.S. 691, 702-703, 107 S.Ct. 2636, 2643-2644, 96 L.Ed.2d 601 (1987); Donovan v. Dewey, 452 U.S. 594, 602, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981); United States v. Biswell, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972).

> A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.  Probation, like incarceration, is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty."  G. Killinger, H. Kerper, & P. Cromwell,

Probation and Parole in the Criminal Justice System 14 (1976); <u>see also</u> 18 U.S.C. § 3651 (1982 ed. and Supp. III) (probation imposed instead of imprisonment); Wis.Stat. § 97309 (1985-1986) (same)² Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium or minimum-security facility, work-release programs, "halfway houses," and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed. <u>See, e.g.</u> 18 U.S.C. § 3563 (1982 ed., Supp. III) (effective No. 1, 1987) (probation conditions authorized in federal system include requiring probationers to avoid commission of other crimes; to pursue employment; to avoid certain occupations, places, and people; to spend evenings or weekends in prison; and to avoid narcotics or excessive use of alcohol). To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy "the absolute liberty to which every citizen is entitled, but only. . . conditional liberty properly dependent on observance of special [probation] restrictions." <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

<u>Griffin</u>, 483 U.S. at 872-875.

In <u>Griffin</u>, the Court stated that the special needs of the Wisconsin probation system made a search warrant requirement impracticable in the probationary context and would interfere with the probation system. The Supreme Court found that the search of the defendant's residence was "reasonable" within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. <u>Id.</u> at 880.

In <u>Sampson v. Wisconsin</u>, 547 U.S. 843 (2006), the Supreme Court addressed whether a search conducted without suspicion under authority of a state statute

which required parolees to submit to searches at any time of the day or night, with or without a search warrant, and with or without cause, violates the Fourth Amendment. In deciding the issue, the Supreme Court concluded "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Id. at 857.

In U.S. v. Midgettte, 478 F.3d 616 (4th Cir. 2007), the Fourth Circuit Court of Appeals applied Griffin to the North Carolina probation statute and found that North Carolina had an identical need as compared to Wisconsin to supervise a probationer's compliance with the conditions of probation to promote their rehabilitation and to protect the public safety. The Fourth Circuit Court of Appeals found, under the North Carolina probation scheme, that a probation officer was not required to have a "reasonable suspicion" that the probationer possessed contraband in order to conduct a warrantless search, and searches conducted in conformity with the statute are reasonable under the Fourth Amendment. Midgette, 478 F.3d at 624.

An examination of North Carolina General Statute § 15A-1343(b)(13) shows that the statute does not require a probation officer to have reasonable suspicion or any other basis in order to conduct a warrantless search of a probationer's person, vehicle or premises if that condition is placed in the judgment placing the probationer on probation.

Based on the foregoing the undersigned finds that Defendant did not have a "reasonable expectation of privacy" in his residence due to his conditions of probation which allowed a warrantless search. The search conducted by Officer Fields and the other officers and deputies did not violate the Fourth Amendment.

Even if there was a requirement that a probation officer have a reasonable suspicion of criminal activity, Defendant fairs no better. Ruling, in the alternative in Midgette, the Fourth Circuit Court of Appeals stated:

> Reasonable suspicion requires "a particularized and objective basis for suspecting the person [searched] of criminal activity". Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). It is "a less demanding standard than probable cause and requires a showing considerably less demanding than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed. 2d 570 (2000). Reasonable suspicion may be based simply upon a tip that has "some particular indicia of reliability". United States v. Perkins, 363 F.3d 317, 324-26 (4th Cir.2004). Indeed, in Griffin, the Court noted that a tip received by a detective that "there were or might be guns in [the probationer's] apartment" provided the probation officer with reasonable suspicion. 483 U.S. at 871, 107 S.Ct. 3164.

Midgette, 478 F.3d at 616.

In this case, Sgt. McDonald of the Buncombe County Sheriff's Department told Officer Fields a person who had been arrested by the Sheriff's Department had been interviewed at the Buncombe County Jail stated that he was selling methamphetamine for Defendant. (Hr'g Tr. 26-27, Sept. 19, 2017.) This was a statement by the arrestee against his own penal interests, which Sgt. McDonald thought was important to report to Officer Fields. A statement against penal interests

is entitled to additional reliability and is a statement allowed into evidence at trial as an exception to the hearsay rule. See Fed. R. Evid. 804(b)(3) Further, the interview conducted by Sgt. McDonald of the arrestee was face-to-face, which provides an additional indication of reliability of the statement. A witness who approaches a police officer and gives a statement can be held accountable for providing a false statement and is not an anonymous person providing an anonymous tip. United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000).

The face-to-face statement given to a sergeant of the Buncombe County Sheriff's Office has a particular indicia of reliability for Officer Fields to have a particularized and objective basis for suspecting Defendant was engaged in criminal activity. See United States v. Perkins, 363 F.3d 317, 324-26 (4th Cir. 2004). The undersigned finds, ruling in the alternative, that Officer Fields did have a reasonable suspicion of criminal activity on the part of Defendant, which would have justified the warrantless search, if a requirement of reasonable suspicion had been imposed.

Defendant next argues that the Judgments placing him on probation only permitted a warrantless search of his person and vehicle upon reasonable suspicion and said nothing about Defendant's residence. (# 18 at 10.) Defendant's argument fails because condition nine in each judgment required Defendant to submit to searches of his vehicle and premises, without any requirement or mention of reasonable suspicion. (Gov.'s Exs. 1, 2) Defendant has confused the difference

between condition nine and condition ten in the probationary judgments and the language of North Carolina General Statute § 15A-1343 (b)(13) as compared to the language of North Carolina General Statute § 15A-1343(b)(14), which addresses only the defendant's person and vehicle in the context of dangerous weapons.

Finally, Defendant argues that he did not give consent for the search. Here, the undersigned disagrees with not only Defendant, but also the opinion of Officer Field's that Defendant could decline to allow the officers to perform the search. (Hr'g Tr. 35-56, 62, Sept. 19, 2017.) Defendant's consent was not required, nor was it necessary. This issue was addressed in <u>United States v. Replogle</u>, 176 F. Supp. 2d 960, 967 (D. Neb. 2001), where the court held:

> Defendant would construe the probation order too narrowly, defeating its purpose. If the probation officer were restrained in her ability to actually search the probationer's residence, all manner of crimes could be conducted by the probationer, and, so long as law enforcement did not have probable cause for issuance of a warrant, the probationer's acts would go undetected. Simply by refusing to "consent", the probationer could thwart the probationary purposes of ensuring that he is living a law-abiding life. No case has been cited or found that gives a probationer such control over his probation officer. To the contrary, probation has been recognized as a conditional liberty during which the probationer is under the supervision----"control", as it were---of the probation officer, not the other way around. To require a probation officer to ask and receive the probationer's consent each time she seeks to monitor the probationer would totally undermine not only the purposes of probation, but also this legitimate incursion on the probationer's privacy, an incursion explicitly found "reasonable" by the Supreme Court. <u>See</u> <u>Griffin v. Wisconsin</u>, <i>infra</i>: <u>see also</u> <u>United States v. Duff</u>, 831 F.2d 176, 178-79 (9th Cir. 1987) (holding that a probationer's Fourth Amendment rights were not violated by a urine test conducted by his probation officer despite the fact that the

probation order did not specifically provide for it because the probation officer reasonably believed that the search would further the purposes of the probation).  United States v. Replogle, 176 F.Supp.2d 960, 967 (D. Nebraska, 2001).

In this case, even if Defendant failed to consent, it is without consequence because Defendant's consent was not required.

## IV.  Conclusion

In light of the foregoing, this Court RECOMMENDS that Defendant's Motion to Suppress (# 10) be DENIED.

Signed: December 11, 2017

Dennis L. Howell
United States Magistrate Judge

The parties are hereby advised that, pursuant to 289, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14) days** of service of same.  Responses to the objections must be filed within **fourteen (14) days** of service of the objections.  Failure to file objections to this Memorandum and Recommendation with the District Court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140

(1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727

F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).